Good morning. May it please the Court, Counsel. My name is E. Brent Bryson. I am the attorney for the appellant, Ariana Mason, in this case. I would like to use 12 minutes for my argument in chief and save 3 minutes for purposes of rebuttal. That's fine. Just watch the clock. Thank you. In the early morning hours of August 16, 2014, without giving any warnings, without giving any commands, Officer Sean Izzo grabbed the appellant, Ariana Mason, from behind by the neck, placed her in a chokehold, threw her to the ground, and then began to employ a procedure known as LVNR, lateral vascular neck restraint, which is deemed to be deadly force under certain circumstances. There are really three time periods that are going to be at issue for purposes of this appeal and in this case in general. The first time period is when Officer Izzo first makes contact. Up until the time, time period two begins, which is where Ms. Mason is standing calmly and is handcuffed. Then we have time period three where Officer Izzo manhandles Ms. Mason over to a glass table without explanation that he wants to change the cuffs to either Ms. Mason or to any of the security officers that are standing around in the vicinity. And when he gets to the table, Officer Izzo bends Ms. Mason over the table, stands in between her legs. She's off balance, as you can imagine, being handcuffed, being bent over a table. Her leg is a reaction of being out of balance, over a table, in high heels and a short dress. Her legs pop up. Officer Izzo then, instead of simply moving off to the side or employing some lesser type of force, grabs her head and smashes her head twice into a glass top table where Ms. Mason suffers severe injuries to her face and also to broken teeth. The egregious nature of this conduct is so obvious and should be so obvious to anyone that is familiar with the excessive force analysis under an objective reasonable test. Do you mind telling me, as I have trouble from your complaint, which event are you alleging is your claim? There's actually, as I said, there's three time periods. I know there's three time periods according to what you said. Which is your claim is what I was trying to get at. It's an excessive force claim. No, no. Time period one and time period three, both. Both? Both. Time period one began, according to the video, when your client was hitting somebody else and he pulls her off. That you think is unreasonable force? I looked, just looking at the video, you think that first incident is unreasonable force? For the reason because I believe that the video demonstrates that Ms. Mason is not hitting anyone but has the security officer by her jacket and is pulling her. She's not hitting anyone. But she's attacking another law enforcement officer. Before the events that you began to recite, your client attacked what looks like a private security officer. I don't know if that's correct. Because the uniform is different than the police officer's uniform. Right, so uniform security of the Mirage Hotel and the casino. And the defendant is uniformed, too, right? The defendant. He has his uniform on, too. Several of them have uniforms. Oh, yes. The defendant officer has a uniform on at the time. Counselor, your argument, I'm just going to tell you because your time is so limited, but on my scorecard, your argument as to the first time period is weak and much weaker than the one on the third. So for my part, it would be helpful to focus on the third. Focusing on time period three, at that particular point, this circuit has recognized that when someone is in handcuffs, that any safety threat is highly diminished by an individual that's handcuffed. Prior to time period three, just minutes before, she was standing calmly, had submitted to authority, and allowed herself to be handcuffed, was in a confined area, was surrounded by security officers and other police officers. Then the officer, Izzo, the appellee in this case, takes without explanation Ms. Mason over to this table and engages in the conduct that I previously articulated for this court. Okay, so am I right that phase two, if I can call it that, is important because of what's not happening? In other words, she's under control, there's not confrontation or pushing or shoving? Absolutely. Okay, so then when we get to phase three, you described what happened in phase three. Your blue brief at eight says that she's hit twice on the table. Is there testimony about, is he holding her collar? It's a little hard for me to see. He's holding the back of her head. Okay, not her hair? Well, the back of her head, he may have her hair, too, because he has the back of her head. Okay, all right. And he pushed her? Is it undisputed that he's pushed her twice? Your blue brief says that he's pushed her twice. It is undisputed that she hit the table twice. There may, you can look from a different camera angle, where he's now taking her down to the ground again. No, on the tabletop. Did he hit her head on the tabletop twice? Yes, ma'am. Is that undisputed? That's undisputed by the videotape evidence. Can we tell by the videotape? So I've looked at the videotape several times. Any, okay, I'll just leave that. Then it's really tough in the videotape to see the, is it a drinking glass? It would appear to be some type of beverage glass, yes. Is there any way we know whether she was injured on the first hit or the second hit, but with a drinking glass? Did that happen the first time or the second time? We do not know that. Do we know whether her teeth were broken the first time or the second time? We do not know that either. Okay. Just the event in totality there at the table. Okay, so for my part, and then I'm going to get out of your way, we certainly do have case law that talks specifically about subduing somebody who's already in handcuffs, and that, I think, is qualitatively different. Of those cases, what is your strongest authority, please, that there was a clearly established rule here that the police officer should have known? Well, it would be the Davis case, which is actually against, which was a case involving the Las Vegas Metropolitan Police Department, where in that case an individual was cuffed and was slammed into a wall headfirst, was then repeatedly, and then he was slammed for a second time into a wall headfirst, and then was down on the ground and was punched. And I think it's important that the court and the analysis focus on what the conduct was. It appears that some of the district courts, despite the recent cases from the U.S. Supreme Court, talking about beyond debate, the Kessler case as being clearly established, whether it's squarely governing, whether it's similar circumstances, which is the White case or Wesby, an obvious case. Under any of those standards, we submit to you that any reasonable police officer should understand that slamming an individual's face into a tabletop after the individual is subdued and in handcuffs is objectively unreasonable. Is part of your claim for Phase 3 that there was an intent to push her face into the drinking glass? I cannot say into the drinking glass. It was an intent to slam her face into the tabletop we submit, based upon the fact of events that had previously occurred during the totality of this event. If you look at the videotape, the distance between where she was at what you call point 2 and the table was less than the distance between you and me, probably half that distance. And he moves her to the table, and he bends her over the table, and she pushes back at him. And you say that her leg came up as a reflex action. He says that she kicked him in the shins, and then he pushes her down hard, and then is when the encounter occurred. So what he says is, and what the videotape seems to show, I think, is that she was resisting him once again while he was trying to change the cuffs, and that the force that you say was excess force occurred when he put her head down on the table. First of all. As part of his reaction to her whipping her body back against him. First of all. What do you say about that? That's what their position is. What I have to say about that is, and we dispute that she was kicking back. Again, we state and we believe that she was off balance. But assuming that she was kicking, all he had to do was stop to the side, step to the side, and he's safe and she's not injured. I mean, we can't forget that for purposes of the summary judgment, he said that she was reaching for a handgun, his handgun. And that's part of the facts that the lower court took. And the inferences and the facts are supposed to be, as this court knows, for purposes of summary judgment, lean towards the non-moving party. Absolutely. However, taking Graham versus Connor, this has to be judged from the perspective of a reasonable officer on the scene rather than a 20-20 vision of hindsight. So in those situations, given that I have to judge this on the perspective of the reasonable officer, whose facts do I believe? As a judge, you are, unless there's some evidence such as video, which frequently is used, that would totally discredit the facts being submitted by the non-moving party. No, but in effect, what we are seeing, if I read you right, looking at the video, one could say it's just a reaction, or one could say she was kicking him. And frankly, she was kicking him is the perspective of the officer. And reading, looking at the video, I can't tell. One could say she didn't do anything, but one could say, looking at the video, that she reared her head back as if to butt him. And in that case, one could say, in the perspective of the reasonable officer, that's what she did. And one has a tough time in the video suggesting that she didn't go for his gun. That argument was totally abandoned before this court for purposes of appeal. I understand what you're going to say there. All I'm trying to say is, what do I do in those instances? Because I can do it very easily. When there's a motion for summary judgment, I take the point of the other side, and that's the absolute truth. But in this case, I can't take the point of the other side. I've got to take the point of the other side, but I've got to say, judged from the perspective of a reasonable officer, your point is not what the reasonable officer was perceiving. So there, I'm, again, and I also have right in that same Graham v. Conner case, tackling or punching a suspect does not necessarily mean the officer used excessive force. That's right in Conner. And so then I have to look at the factors in Conner.  I'm happy to talk about the factors, but I want to answer your question that you asked that I didn't get to answer. Okay. You should take the plaintiff's version, the non-moving party, you should accept those as true as far as there being a disputable, material disputable issue of material fact, and the jury should decide that question. So that's the answer that I give to you. I don't know whether you can find a case that says that. Well, I believe that it's pretty. You give me the case. I couldn't find it. That's why I ask you the question. Well. I found Graham v. Conner, which is the case on excessive force, and is the standard to review. And it says, I look from the perspective of a reasonable officer. And in this instance where we have a fight between the two, and I have a video of it, and I have a fight between the two as to what they did or what they didn't do, it seems to me that I have to give the officer the benefit of the doubt in that instance because I'm looking at the perspective of the officer. I'm looking at the time. Let me quickly say, respond to the Graham. The Graham factors are the severity of the crime. At the time of the incident, at the most, she would have been engaged in a misdemeanor badly. She attacked the security guard. Not at the time where she is calm and he takes her over to the table. Oh, I see. She's compliant. You're getting to there. But we're talking about to the begin with. When the begin with, your argument is she was never charged with a crime. If she had any crime at all, it's a misdemeanor. And immediately quit when Mason knew she was a police officer. His idea is she'd attacked a security guard. And then she attacked him. Because I moved you to phase three. That may be what's causing the confusion, in fairness. But if you get to phase three, because in phase two there's this period of calm. Correct. Right? Yes. And so then the application of the Graham factors is what? If you apply the Graham factors there, the severity of the crime, she's not committing a crime at that time. She's calm. But she just did. It would have been a misdemeanor badly. Already. She just did. The regional police officer would perceive that she just did. What's the second? She posed no immediate threat to the safety of officers or the others. She was in a confined area. She had succumbed to police authority. She was not attempting to flee. Just before he smashed her head in, the question is whether a regional officer would have understood that she was getting ready to wrestle with him, kick him, headbutt him. And then what's the third factor? The third factor would be whether or not she was actively resisting arrest or attempting to flee at that time. Right. He can be wrong. And looking at the video, one might well think that he was wrong. He outweighed her by about 100 pounds. And there was a drinking glass on the table, and she was injured. And I really have a lot of questions about why it was necessary to hit her twice into the table to subdue her. And, after all, she was handcuffed. But that's all 20-20 hindsight. So you are over your time. But could you just tell me as succinctly as possible, why should we decide that his behavior was not only wrong but unreasonable? Because there were lesser alternatives that he could have utilized at that particular time. So where do we have case law saying he has to use lesser alternatives? The Diorly. There's multiple cases that say you don't have to, but if it's possible that you should, just like you should give a warning or you should give a command. He could have simply stepped aside and said, hey, calm down, stop. All right. Thank you for your argument. Thank you. You can plan on we're going to put one minute on the clock for you when you come back. You're at about two and a half minutes over now, but we'll give you that. Thank you. Sure. Good morning, Your Honors. May it please the Court. Craig Anderson on behalf of Officer Sean Izzo and the Las Vegas Metropolitan Police Department. And when we go to time period three, we also bring with us time periods one and two. That's from Sheehan and that's from Wesby. You look at the totality of the circumstances. So when they move to the table, what Officer Izzo knows is that he has a person that's willing to attack, that has attempted to harm him, that has calmed down a couple of times and then reinitiated the attack. And so when he brings her there. And reinitiated the attack? He doesn't know that. He's reasonably perceiving that because. Well, there were times like when he had her on the ground initially in phase one where she appeared calm. So he allowed her to her feet where she immediately turned and attacked him. So he's aware that, I don't know if the correct word would be playing possum at times, but she has had times in this interaction where she has appeared to be calming down and then reinitiated the aggravation. So I don't want to belabor this point. He's wearing a uniform. She says he approaches her from behind. He does, at least, you know, initially. So there's a question about whether she realizes she's, that's important to me, whether she realizes this person's a police officer. After she gets up the second, there's a time I think after she gets back up, they're turning and she can see him. She's facing him. And at least he, a reasonable police officer, would expect at least by then she knows that he's a police officer. Is the testimony that he, did they exchange words then? Of course, the video doesn't have audio. She says that he never said a word the entire time. She says she was swearing and cursing at him and that she's unable to recognize that he is a police officer because she has self-diagnosed herself with tunnel vision. Still, even at that point. She says until she is handcuffed, until she is arrested, she did not know he was a police officer. Well, handcuffed and arrested is different. And that's, okay, and that was my question with her. So once she's handcuffed, she says she realizes he was a police officer. And is all that in Phase 1? Phase 1 and what they're doing is Phase 2. So at Phase 2. No, but I'm just asking, forgive me. Correct. I wasn't clear. Was she, is she handcuffed at the end of Phase 1? Well, he did the phases. I would say she's handcuffed at the end of Phase 1, yes, because then they're standing. Okay, so all that's confusion and maybe she doesn't understand that he's a police officer, but he's in a uniform and a reasonable person in his shoes would think that she knows. Correct. So I'm giving you Phase 1. I think that's weak. Okay. All right. So then Phase 2 is, I think, a period of calm. Correct. Okay. And then can we go to Phase 3? Phase 3. And all I was saying then about Phase 1 is we take those facts with us. Sure. Because if he obviously, if he had just walked her to a table and put her face into it, that's excessive force. But here he brings this history. So when he gets her to the table, she, what her testimony is, is that when he tries to it blatantly contradicts her story. So you can disregard her story under Scott v. Harris. Well, wait a minute. It also blatantly disregards, as far as I can see, any attempt to reach for a gun. Okay. Is there any frame in that video where I should see that? Correct. And so... Wait, wait, wait. What's that mean, correct? That I, in the video... Are you agreeing she never reached for the gun? I'm not agreeing she didn't. I'm agreeing that you, that when the facts have to be viewed in the light most favorable to the plaintiff, that I have no evidence of that from the video. The video does not show that. And so, for summary judgment purposes, I would have to accept that there's... The gun's on the right side, his right side, and it doesn't show a view from the right side. Correct. So there's an absence of evidence of that. Yes. So that would be an issue of fact. And he would be able to testify whether she touched his tool belt. And I don't, and I think that he just said the hand went back there. But... And you're not arguing that today? I am not. Okay. But there are other discrepancies in the video that you think contradict her testimony. Well, what her story is is that she lost her balance, and that is what caused this movement. But what her testimony is is implausible. It says, I fell forward, and then I fell backwards. There's absolutely no way that when she's forward she could fall backwards. Why not? She's pushed into a table. Well, she said she lost her balance and fell forward and fell back. This is before the push. Okay? So this is when he's bending her over before the push that caused the injuries, Your Honor. And so she says that her coming back up is the video depicting her losing her balance. But regardless, even accepting... I may have spent more time on heels than you. Oh, and I would hope so. But... I don't want to make any personal assumptions. But I certainly, I didn't have any problem with that testimony. Okay. Okay. Well, so let's accept as true then she lost her balance. Okay. So then what we're looking at is what a reasonable officer would perceive in that situation. And this officer has been attacked by her. He's been punched by her. He's been scratched by her. So a reasonable officer in that split-second moment could objectively, reasonably perceive that she was attempting to harm him again. I think that's right. Can you focus on... And that some degree of force was necessary. And that's always our problem in these cases. Exactly. Because it's about how much is too much. And we don't... You view this from 20-20 hindsight. Can you tell me why it was necessary to push her down twice? Well, the second time I believe is consistent with her losing her balance. It shows her turning and him moving her to the ground. And then she goes down again. But you don't see him push her. It is when he moves her from down. I'm sure she's dazed because her face has just hit the table. That that appears to almost be... And her face just hit the glass? Was she bleeding at this point with broken teeth at this point? I don't think we know that. I don't think we know which hit caused the injury. Okay. He said that your opponent said that the officer slammed her head into the table twice and that that's undisputed. You're saying that is disputed. It is disputed. I think that is disputed by the video. I think the first time into the table is intentional. The second time... But it's all part of putting her down. Yeah, he's guiding her to the floor. And then you see her, and it looks like a loss of balance where she hits the second time. So is it... And I'm not trying to be difficult, but this is important to me, too. Did she... She hits the table twice? She does. That's undisputed. Yeah, it's a 10-second difference. Okay. And so the first time, clearly intentional. And the second time, what you're saying is maybe that was... The intent was to take her to the ground and she hit the table on the way? Well, what the video shows is him turn her, and then she wobbles, and she goes... Her face goes back into the table. It hits a glance... A straight-on blow into the table the first time. Correct. And then there's a glancing blow as he's putting her on the ground. Yes. Glancing blow where she does hit the table. Correct. You see it the same way I do. And the second one views, like, to me, the loss of balance kind. There's a Monell claim here, right? And sometimes in these cases we see that there's been follow-up review, the supervisor knows about it, that there might have been additional training, that there might have even been discipline. Do we know anything about what happened as a result of this? I'm troubled by the second hit. I'm not trying to be subtle. I'm really troubled by the second hit. I'm troubled that he outweighed her by 100 pounds, and I'm just wondering, is there anything in the record about follow-up? Well, he did a use-of-force report. It was reviewed by his supervisors. He was not disciplined. They found this to be a reasonable use-of-force under the circumstances. And if you're talking about a Monell claim ratification, even if you find this to be excessive force, one incident is not enough. I'm not talking about a Monell claim. I'm talking about the other question. I think you've answered it. Judge Smith? Did you conduct an internal affairs investigation? Internal affairs, and this is in her deposition, went to the hospital and interviewed her. And so she was interviewed. Well, there was more than just going to the supervisor. Correct. I mean, this was a report of serious injury, so they followed up on it. I do not believe that she ever made an internal affairs complaint, so they did that on their own accord because they were at the hospital and they interviewed her. And so I think that when you look at the force that was used, and understandably it caused injury, which is a factor in addressing the force, you also have to look, though, at whether that force is likely to cause injury. And being pushed forward is a routine police tactic to help get someone into cuffs. Now, obviously no one knew there was a glass on the table. So I would argue at that point. I'm sorry, obviously no one knew. It's a glass-top table. It's a marble table, I believe. Yeah, glass-top marble table. Oh, I guess I thought it was a glass-top table. You can see in the video somebody putting the glass on the table. A drinking glass. Now we're talking about drinking glass. It was a cocktail glass. So when you say nobody knew. Well, I'm sorry, people knew. They didn't know when they were there at the table. Officer Izzo didn't see the glass before he took the action. I don't think there's any evidence indicating that he intentionally pushed her face into the glass. What he was doing was attempting to get her body onto the table to switch out the handcuffs. And so you look at whether that type of force is unreasonable under the circumstances. And based upon her prior activity and her actions, it's not. And there's no clearly established case law that would have prevented him from putting her on the table. They cited to Davis v. City of Las Vegas, which is a case where the suspect never resisted. He was a little bit verbally uncooperative. And he was prone on the ground when he was punched on the face. But before that, he was swung violently into a wall twice, and he ended up suffering a broken neck. I think if you look at the closer cases, because this is a challenging environment, it's a unique set of facts, especially during the first phases, that based upon they don't have this scene controlled. Sir, before you leave, I think Davis is distinguishable because it's more extreme. Yes. And again, this is always a continuum. She hit the table hard, hard enough to break teeth. Correct. Yeah, but that's, I think, where you get into the 20-20 hindsight. And he's basically making a self-defense move, which he is allowed to do. He sees the body propel up back towards him. You know, he feels like he's being kicked, which I believe is reasonable based upon the prior action she has taken. And he reacts instinctively and pushes her forward. It's a question of degree. That's my only point. It's a question of degree, which is why I asked the question. I think you have to concede she hit that table hard. We don't do 20-20 hindsight, but neither do we. You know, at some point, these claims are meritorious. Completely. I'm here a lot because I lose a lot on these cases because there are meritorious cases. But this one, when you take it in the milliseconds that he has to make his decisions, based upon the totality of the circumstances up to that point. And for him to monitor the amount of force he's using in the push would be admirable. But these officers are not required to use superhuman judgment in these situations. They're just expected to act in the zone of reasonableness. And so when you get the saucier versus cats, it says you may mistakenly use more force. As I said, they can be wrong. They just can't be unreasonable. And that's why we have cases like Davis, and that's why we have other cases where we don't find that it rings the bell. Yeah, I think the best language is in saucier versus cats for this one. Yes. Judge Smith, were you trying to? I guess I'm, again, at the same point that I asked your opposition. I always take the facts as alleged by the plaintiff when I'm trying to decide this particular case. However, in this kind of an action, it seems to me that Connor leads me to the idea that I have to judge these facts from the perspective of the reasonable officer. So in that instance, do I take the officer's view of the facts in order to determine whether it was the perspective of a reasonable officer, or do I take the plaintiff's view? You take her facts, apply them to his interpretation, and determine whether that's subjectively reasonable. So where she says, for example, my heel struck his lower leg because I lost my balance. You take that as true, but then you view it through the perspective of the officer. Now, if she had – Well, does that then mean that he is free to perceive that she was kicking him? I would say if he had just walked her to the table and we don't have one and two. No. Because he would have no reason to think that she would be violent towards him. She would have no reason to think that he's attacking her. But based upon the totality of her actions prior to getting her there in this specific case, it is reasonable for him to perceive she is attacking him again. Well, the district court held that the plaintiff whipped her body backwards toward Izzo, to which he responded by slamming her upper body back onto the table. And they also found that her face – it didn't find that her face struck the table. He found that the face struck the cocktail glass, which later caused stitches. It didn't say anything about teeth being broken. What is your position about what she struck, according to the record, and whether there were teeth broken? Well, their complaint says that she struck the cocktail glass. That's what the complaint says. That's what the complaint says, and that's what the court found. Correct. And I don't believe there was ever a finding as to what caused the teeth. You know, there's no evidence in the record. But not a dispute that the teeth were broken? I'm trying to think. I don't think I saw that. The district court, I don't think, found anything about the teeth, but there was something in a brief about the teeth, and there was something in the complaint. I didn't see it in the complaint, but I need to go back and look for it. Yeah, but the complaint says that it was the cocktail glass that caused the injury. Yeah. And then as to the head-butting, that the action happened, I take what the plaintiff says, but as to the perception, I take the policeman's action? Again, exactly. And, again, the argument would be that based upon her prior actions, when her body comes back towards him, it would be reasonable for an officer in these specific circumstances to perceive that as another attack on him because of her prior actions looking at the totality as a whole. Now, like I say, if he had just met her, walked her to the table, and as Judge Christian pointed out, lost her balance because of Hills, this would be an issue of fact as to whether that's excessive. But because we have this three-minute time period where we have observed her actions, I mean, Officer Izzo, any objectively reasonable officer would have perceived that she was still attempting to harm him. She had punched him three times. She had scratched him. She was certainly prior to this attempting to cause him injury. That's the problem. I think that's right. We look at the totality of the circumstances, and this is unique because we have this three-minute delay, downtime. It's less than that. It's three minutes is the total. Anyway, that's the problem. And he's going to get up and say, what about that? And since you don't get another chance. Well, so with the cool-down, I think the most recent case would be the Supreme Court's case in Sheehan versus the city and county of San Francisco. We know it well. Yeah. And I believe that the cool-down period in this case is not an effective argument because there were different periods, not as long, but there were different periods during this altercation where she appeared to be calm. The first is when she's on the ground. He thinks the situation's over, so he stands her up to handcuff her, and she turns and attacks him. And then he gets her on the ground again, and she fights her way back up. So I think in these specific facts, a reasonable officer would be justified in believing that she would reinitiate an attack. You're significantly over your time. Let me just check with my colleagues. Apparently no further questions. Thank you for your argument. Thank you, Your Honors. You bet. Counsel? Thank you. Ms. Mason testified that she did not headbutt, attempt to headbutt Officer Izzo, and she did not kick Officer Izzo. Why couldn't he have reasonably thought she did?  We're reviewing it from the perspective of the officer. Because the fact that the movement is not consistent, I submit to you, with someone at that point, timetable three, that is trying to commit any type of battery or aggressive act. It is more consistent. In making that judgment, can we rely on what we see in the videotape as to whether or not that is something he would reasonably have perceived as a headbutt? You can rely upon what she says. Can we rely on what we see? That's the evidence. That gets me to my next point here. So the answer is yes. The answer is yes, but also, and it answers your question, Judge, if direct evidence produced by the moving party conflicts with direct evidence produced by the non-moving party, the judge must assume, must assume, the truth of the evidence is set forth by the non-moving party with respect to that fact. That's a Ninth Circuit case, TW Electrical Service, Inc., versus specific electrical contractors. You don't need to recite that case to me. That's the reason I was getting you at this, because it seems to me if there is a movement back toward him as if to butt his head and nobody disagrees or she says that's what happened or I see that on the film, then it seems to me that I have to take his interpretation of what that means, not that I have to take I didn't try to headbutt him. The action happened. There's no question you don't take issue with the action happened. Now, at this point, I have to say does the officer's interpretation thereof, is it reasonable? No, and I will explain to you why. Okay. Because you cannot accept that Scott V. Henrich, you cannot accept the self-serving statements of an officer. The court must also look at the circumstantial evidence that if believed would discredit the police officer's story and which might lead a rational fact finder to conclude that the officer acted unreasonably. So you cannot simply accept. I understand your point. Is there anything further, Judge? No. Thank you so much for your argument, both of you. Thank you. We'll take that case under advisement. We'll hear the last case on the calendar for the day, 17-35993, Hong v. Bank of America.
judges: N.R. Smith, Christen, Payne